1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10   BERNELL DUPLESSIS, individually,

11                Plaintiff,

12        v.                                          CASE NO. C06-5631RJB

13   GOLDEN STATE FOODS, a Delaware                   ORDER GRANTING
     Corporation doing business in Washington         DEFENDANT GOLDEN STATE
14   State; DANIEL VAN HOOZER, individually,          FOODS' MOTION FOR
     and JANE DOE VAN HOOZER, individually,           SUMMARY JUDGMENT;
15   and the marital community composed thereof       GRANTING DEFENDANTS
                                                      DANIEL VAN  HOOZER AND
16                                                    "JANE DOE" VAN HOOZER'S
                                                      MOTION FOR SUMMARY
17                                                    JUDGMENT; AND DENYING
                                                      SURREPLY TO STRIKE
18

19
            This matter comes before the Court on Defendant Golden State Foods' Motion for
20
     Summary Judgment (Dkt. 18), Defendants Daniel Van Hoozer and "Jane Doe" Van Hoozer's
21
     Motion for Summary Judgment (Dkt. 22), and Plaintiff's Surreply to Strike Materials Contained
22
     and Attached in Defendants' Reply (Dkt. 58). The Court has considered the pleadings filed in
23
     support of and in opposition to the motions and the remainder of the file herein.
24
                                  **I. FACTUAL BACKGROUND**
25
            Defendant Golden State Foods ("GSF") is a distributor and food processor of products
26
     for McDonald's and Starbucks. Dkt 20 at 1. GSF has a distribution center in Sumner,
27
     Washington. *Id.* At times most relevant to the plaintiff's claims, Defendant Daniel Van Hoozer
28

ORDER
Page 1

1  was Assistant General Manager of the Sumner Distribution Center. Dkt. 30 at 3. Plaintiff Bernell

2  Duplessis is African American and has worked for GSF since 1994. Mr. Duplessis is a bargaining

3  unit employee and served as shop steward for Teamsters Local Union No. 117 ("the Union") at

4  GSF in 2001 and 2002. In 2001, during Mr. Duplessis's tenure as shop steward, GSF

5  implemented Engineered Work Standards ("the Standards") to promote efficiency in distribution

6  and shipping. Dkt 20 at 2. The Standards are based upon how long it takes an average warehouse

7  associate to complete various warehouse tasks. Dkt 20 at 2. GSF's minimum acceptable weekly

8  performance is 95% of the Standards. Dkt 20 at 2. Employees falling below the Standards may

9  receive corrective action, and employees who achieve greater than 100% of the Standards are

10 eligible for incentive pay. Dkt 20 at 2.

11         In response to the Engineered Work Standards, some GSF employees filed grievances and

12 others signed a petition arguing that the Standards were too high in light of safety concerns. Dkt

13 20 at 2. Mr. Duplessis was involved in numerous discussions about the Engineered Work

14 Standards with other Union representatives and with GSF managers. GSF admits that these

15 discussions sometimes led to heated exchanges. These discussions led GSF to allow engineers

16 selected by the Teamsters Union to evaluate the efficacy, safety, and attainability of the Standards

17 on behalf of its members. The Production Standard Audit Report concludes as follows: "With the

18 exception of freezer loading, the production standards evaluated were found to be reasonable

19 based on the conditions observed at the time of the study. . . . The freezer loading standards were

20 found to be unacceptable based on observations." Dkt. 20, Exh. 3 at 25. The Report

21 recommended that "3.3141 standard minutes be added to each freezer loading assignment." *Id.* at

22 21. Mr. Van Hoozer agreed with the recommendation. *Id.* at 26.The Teamsters Union ultimately

23 approved the Standards. According to GSF, Mr. Duplessis stepped down as shop steward and as

24 a member of GSF's safety committee because he failed to prevent

25 implementation of the Standards.

26                    **II. PROCEDURAL BACKGROUND**

27         The plaintiff brings the following claims: (1) racial discrimination in violation of RCW

28

ORDER
Page 2

1   49.60 et seq.; (2) hostile work environment in violation of RCW 49.60 et seq.; (3) disparate

2   treatment in violation of RCW 49.60 et seq.; (4) disparate impact in violation of RCW 49.60 et

3   seq.; (5) unlawful retaliation; (6) negligence, negligent infliction of emotional distress, and

4   negligent hiring, retention, and supervision; (7) intentional infliction of emotional distress,

5   outrage, assault, and battery; and (8) equal rights under the law (42 U.S.C. §1981 and Title VII of

6   the Civil Rights Act of 1964). Dkt.1-2, Exh. OO at 25-26 (Second Amended Complaint), Dkt. 6

7   at 3.

8          Defendants Daniel Van Hoozer, "Jane Doe" Van Hoozer, and Golden State Foods

9   move separately for summary judgment. Dkt. 18, 22. The plaintiff filed a response addressing

10  both motions. Dkt. 42. The original response was deemed insufficient by the Court because it

11  contained single-spaced text not comprised solely of quoted material. Dkt. 41 at 1. The Court

12  warned the plaintiff that "[a] party may not prevail in opposing a motion for summary

13  judgment by simply overwhelming the district court with a miscellany of unorganized

14  documentation." *Id.* at 2; *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

15         The plaintiff filed a second response that fails to attribute specific facts to the plaintiffs'

16  arguments. The response is accompanied by a lengthy affidavit from the plaintiff, which appears to

17  be an attempt to circumvent the fifty-page limit. This affidavit contains numerous factual

18  allegations that are not addressed or referenced in the plaintiff's response to the motions. It is not

19  the responsibility of the Court to cull through the extensive factual record in this case to

20  determine which of the factual allegations support each of the plaintiff's claims. As explained

21  more fully below, the inadequacy of the plaintiff's response has rendered analysis of the

22  defendants' motions unnecessarily complicated and time-consuming. The Court has therefore

23  been required to rely, in part, upon the defendants' uncontested summation of the plaintiffs'

24  claims.

25                              **III. SUMMARY JUDGMENT STANDARD**

26         Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

27  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

28

ORDER
Page 3

1   to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

2   P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

3   fails to make a sufficient showing on an essential element of a claim in the case on which the

4   nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

5   There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

6   rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

7   *Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

8   evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a

9   genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

10  factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v.*

11  *Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

12  *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

13      The determination of the existence of a material fact is often a close question. The court

14  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

15  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec.*

16  *Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of

17  the nonmoving party only when the facts specifically attested by that party contradict facts

18  specifically attested by the moving party. The nonmoving party may not merely state that it will

19  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

20  to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

21  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

22  presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

23                          **IV. DISCUSSION**

24  Washington's Law Against Discrimination provides as follows:

25      It is an unfair practice for any employer: . . . (3) To discriminate against
        any person in compensation or in other terms or conditions of employment
26      because of age, sex, marital status, sexual orientation, race, creed, color,
        national origin, or the presence of any sensory, mental, or physical
27      disability or the use of a trained dog guide or service animal by a disabled
        person.

28

ORDER
Page 4

1

2   RCW 49.60.180. Title VII provides as follows:

3       It shall be an unlawful employment practice for an employer--

4       (1) to fail or refuse to hire or to discharge any individual, or otherwise
        to discriminate against any individual with respect to his compensation,
5       terms, conditions, or privileges of employment, because of such individual's
        race, color, religion, sex, or national origin;

6

7   42 U.S.C. §2000e-2(a)(1).

8       42 U.S.C. §1981 provides, "All persons . . . shall have the same right . . . to make and

9   enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws

10  and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

11      In analyzing claims under Washington's Law Against Discrimination, Washington courts

12  look to federal courts for interpretation and use the *McDonnell-Douglas* burden-shifting analysis

13  used to assess Title VII claims. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180 (2001). The

14  *McDonnell-Douglas* burden-shifting analysis also applies to claims under 42 U.S.C. §1981.

15  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.5 (9th Cir. 2006).

16      The analysis has three components. First, the plaintiff must present a prima facie case of

17  discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff

18  succeeds in presenting a prima facie case, there is a rebuttable presumption of discrimination, and

19  the burden of production shifts to the employer to produce a legitimate reason for the adverse

20  employment action. *Id*; *Cornwell*, 439 F.3d at 1028. If the defendant is able to do so, the

21  defendant is entitled to judgment as a matter of law unless the plaintiff's showing creates a

22  genuine issue of material fact to demonstrate that the reason produced is pretext for

23  discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804. The ultimate burden of persuading

24  the trier of fact that the employer intentionally discriminated remains with the plaintiff. *Norris v.*

25  *City and County of San Francisco*, 900 F.2d 1326, 1329 (9th Cir.1990). Even though the plaintiff

26  must prove each element of the *McDonnell Douglas* test, the requisite degree of proof required to

27  establish a prima facie case is "minimal and does not even need to rise to the level of a

28

1  preponderance of evidence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir.

2  2002).

3  **A. DISPARATE TREATMENT**

4          Mr. Duplessis contends that the defendants discriminated against him on the basis of his

5  race in violation of Washington's Law Against Discrimination ("WLAD"), RCW 49.60 et seq.,

6  and Title VII, 42 U.S.C §2000e *et seq*, and 42 U.S.C. §1981. Dkt. 42 at 11.

7          Two methods of establishing a prima facie case of disparate treatment under Title VII are

8  recognized in the Ninth Circuit. First, a plaintiff may establish her case by submitting direct

9  evidence of discriminatory intent. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

10  Second, a plaintiff may establish a prima facie case by showing she is entitled to a presumption of

11  discrimination arising from factors such as those set forth in *McDonnell Douglas Corp. v. Green*,

12  411 U.S. 792, 802-04 (1973). Here, Mr. Duplessis contends that his disparate treatment is

13  supported by direct evidence of discriminatory intent and warrants a presumption of

14  discrimination. *See* Dkt. 42 at 14 ("Most of the racial harassment was direct harassment.").

15          To make out a prima facie case of racial discrimination on the basis of disparate treatment

16  under Title VII, the plaintiff must show that (1) he belonged to a protected class; (2) he was

17  performing his job in a satisfactory manner; (3) he was subjected to an adverse employment

18  action; and (4) similarly situated employees not in his protected class received more favorable

19  treatment. *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Cornwell*, 439 F.3d

20  at 1028. Under Washington law, a prima facie case of disparate treatment requires evidence that

21  the plaintiff (1) belongs to a protected class; (2) was treated less favorably in the terms or

22  conditions of his employment (3) than a similarly situated, nonprotected employee; and (4) was

23  doing substantially the same work as the nonprotected "comparator." *Johnson v. Department of

24  Social and Health Services*, 80 Wn.App. 212, 227 (1996). Here, the defendants dispute whether

25  Mr. Duplessis can demonstrate an adverse employment action or differential treatment, the third

26  and fourth elements of the plaintiff's prima facie case. It is difficult to discern what facts Mr.

27  Duplessis alleges in support of his disparate treatment claim. The response contains more than

28

1 three pages listing "specific racial treatment by management when Bernell [Duplessis] was elected

2 as shop steward." Dkt. 42 at 3-6. This section contains several factual allegations, each of which

3 is addressed below.

### 1. Adverse Employment Action

5 The "adverse employment action" requirement is interpreted broadly and may include

6 reductions in compensation, a warning letter or negative review, undeserved performance

7 evaluations, and transfers of job duties. *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374

8 F.3d 840, 847 (9th Cir. 2004); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

9 Although Mr. Duplessis alleges several adverse employment actions allegedly constituting

10 retaliation, the plaintiff's response to these motions fails to identify adverse employment actions

11 supporting his race discrimination claim. The plaintiff's failure to specifically articulate the facts

12 supporting this claim has frustrated the Court's analysis.

13 According to the defendants, Mr. Duplessis contends that he was asked to step down from

14 the Safety Committee due to his race. Dkt. 18 at 7. In his deposition, Mr. Duplessis testified that

15 he "had a feeling" that the defendants did not "want" him to be on the Safety Committee. Dkt. 21

16 at 116. Taking Mr. Duplessis's allegations as true, he fails to demonstrate that his decision to step

17 down from the Safety Committee constitutes an adverse employment action.

### 2. Differential Treatment

19 As the defendants contend, the plaintiff fails to offer evidence demonstrating that the

20 defendants treated similarly situated people outside of Mr. Duplessis's protected class differently.

#### a. Tennis Shoes

22 The defendants contend that Mr. Duplessis cannot establish that being sent home for

23 wearing tennis shoes constitutes differential treatment and offer evidence that Caucasian

24 employees have also been sent home for violating this policy. Dkt. 18 at 7; Dkt. 20 at 4; Dkt. 20,

25 Exh. 5 at 35 (Caucasian employee sent home for wearing tennis shoes). Mr. Duplessis fails to

26 refute this evidence.

#### b. Longer  Lunches

28

ORDER
Page 7

1    The defendants contend that Mr. Duplessis and other African American employees were

2  not denied longer lunches on the basis of race. Dkt. 18 at 7. GSF employees who work in the

3  freezer are allowed fifteen more minutes for their lunch periods than are warehouse employees.

4  Dkt. 18 at 7 n.4. The defendants offer evidence that non-African American employees have been

5  disciplined for taking long lunches without performing the requisite work in the freezer. Dkt. 20

6  at 4-5; Dkt. 20, Exh. 6 at 37-39. Mr. Duplessis fails to refute this evidence.

7                **c. Job Bidding**

8    Mr. Duplessis contends that a junior employee was assigned to work "in the dry" while

9  Mr. Duplessis was left to work in the freezer and that this decision was based on his race. Dkt. 21

10 at 85. Mr. Duplessis admits that he earned more money while working in the freezer but contends

11 that working "in the dry" was a better assignment. Dkt. 21 at 86. GSF's collective bargaining

12 agreement provides that seniority determines job assignments at the start of each shift. Dkt. 21 at

13 32-33. Once the shift has started, seniority no longer determines job assignments. Instead, job

14 assignments are left to the discretion of the Warehouse Supervisor. Mr. Duplessis does not

15 demonstrate that this reassignment was in violation of GSF policies or the collective bargaining

16 agreement. Mr. Duplessis also fails to create a genuine issue of material fact as to whether other

17 similarly situated individuals outside of his protected class were treated differently with regard to

18 mid-shift reassignments.

19                **d. Loss of Safety Award**

20   Mr. Duplessis contends that he did not receive a safety award due to his race. The

21 defendants contend that Mr. Duplessis was denied a safety award because he damaged a trailer

22 with a forklift and the accident was deemed preventable. Dkt. 18 at 12. The defendants offer

23 evidence that non-African American employees have similarly been denied safety awards. See

24 Dkt. 20 at 6-7. The defendants also offer evidence suggesting that the Safety Committee was

25 unaware of Mr. Duplessis's identity and race when evaluating the incident to determine whether it

26 was preventable. Dkt. 19 at 3. Mr. Duplessis fails to demonstrate that similarly situated employees

27 outside of his protected class were treated differently with regard to safety awards.

28

1        **e. Treatment as Shop Steward**

2        Mr. Duplessis contends that he was treated differently from other shop stewards on the

3   basis of his race. Dkt. 42 at 3. As support, Mr. Duplessis cites his EEOC charge, in which he

4   contends that he was not allowed to view evidence and was therefore unable to sufficiently

5   represent employees as shop steward; that he was asked to resign from the safety committee; that

6   he was denied the opportunity to bid for certain jobs; and that he was sent home without pay.

7   Dkt. 46, Exh. 17 at 49; Dkt. 44 at 41-42. Mr. Duplessis fails to compare this alleged mistreatment

8   to the defendants' treatment of similarly situated employees outside of his protected class.

9        Mr. Duplessis's other citations to the record do not support this allegation. Exhibit 12 is a

10  letter notifying Mr. Duplessis of his appointment as shop steward. Dkt. 46, Exh. 12 at 34. The

11  cited portion of Mr. Duplessis's deposition demonstrates that Mr. Duplessis believed that he was

12  verbally abused and treated differently and that Cecil Fouts complained to Golden State Foods on

13  behalf of Mr. Duplessis. Dkt. 44 at 21. These allegations are conclusory and fail to create a

14  genuine issue of material fact as to whether Mr. Duplessis was treated differently on the basis of

15  race.

16       Exhibit 33 is a letter from Mr. Duplessis to the EEOC listing his allegations of disparate

17  treatment while serving as shop steward. Dkt. 47, Exh. 33 at 47. It is accompanied by a letter

18  from Golden State Foods answering Mr. Duplessis's questions regarding an incident underlying a

19  union grievance. *Id.* at 51. While Mr. Duplessis contends in his letter to the EEOC that the

20  company's response was late, Mr. Duplessis fails to link this incident to his race.

21       Exhibit 34 is a letter to the EEOC disputing contentions that Mr. Duplessis failed to

22  adequately communicate with Golden State Foods as shop steward. Dkt. 47 at 53. This letter

23  does not evidence differential treatment on the basis of race.

24       Mr. Duplessis contends that the defendants would not hold meetings with him when he

25  raised concerns as shop steward. Dkt. 42 at 4. As support for this contention, Mr. Duplessis cites

26  his deposition testimony that, like other shop stewards, he occasionally met with Golden State

27  Foods' managers to discuss grievances. Dkt. 44 at 22. These exhibits fail to create a genuine issue

28

ORDER
Page 9

1  of material fact as to whether Mr. Duplessis was treated differently on the basis of his race.

2  **f. Lead Position**

3  Mr. Duplessis contends that Golden State Foods' managers did not want him to serve as

4  shop steward or in a position of authority. Dkt. 42 at 4; Dkt. 44 at 21. As support, Mr. Duplessis

5  cites his deposition testimony stating that he applied for a lead position but withdrew his

6  application. Dkt. 45 at 44. Mr. Duplessis also cites his job application and a list of guidelines and

7  responsibilities for the position. Dkt. 48, Exh. 50 at 46. The response fails to demonstrate any

8  basis upon which a reasonable jury could conclude that Mr. Duplessis was effectively denied the

9  lead position on the basis of his race.

10  **g. Interview Conflict**

11  Mr. Duplessis contends that Mr. Van Hoozer "initiated a conflict in the interview

12  process." Dkt. 42 at 4. Mr. Duplessis cites his deposition testimony, in which he explains that Mr.

13  Van Hoozer was "offended" by something Mr. Duplessis said because Mr. Van Hoozer believed

14  that Mr. Duplessis was referring to the union contract when he was actually referring to a

15  different document. Dkt. 45 at 57. Mr. Duplessis testified that "the only thing I could base it [the

16  conflict] on is race." *Id.* This speculation is not enough to withstand summary judgment.

17  **h. Behavior at Meetings**

18  Mr. Duplessis contends that his meetings with Golden State Foods' managers were hostile

19  and characterized by yelling and screaming. Dkt. 42 at 4-5; Dkt. 44 at 22. Mr. Duplessis testified

20  that to his knowledge, other shop stewards did not encounter such problems in meetings with

21  management and that Frank Gonzales, another shop steward, only encountered problems in his

22  representation of Mr. Duplessis. Dkt. 44 at 22-23. The plaintiff's mere allegations that the

23  contentiousness of these meetings was due to his race and his allegations that other shop

24  stewards' meetings (meetings in which he did not participate and of which he had no personal

25  knowledge) did not involve such contentiousness are not enough to allow this claim to proceed to

26  trial.

27  **i. Witness at Disciplinary Meetings**

28

1    Mr. Duplessis contends that he was not allowed to serve as a witness at disciplinary

2 meetings involving Paul Wentz and Frank Gonzales. Dkt. 44 at 25-27; Dkt. 48, Exh. 38 at 8; Dkt.

3 48, Exh. 38 at 10. In his affidavit, Mr. Duplessis contends that a Caucasian employee was

4 permitted to serve as a witness for Frank Gonzales. Mr. Duplessis does not know who ordered a

5 Caucasian employee to instead serve as a witness. Dkt. 44 at 26. Mr. Duplessis fails to create a

6 genuine issue of material fact as to whether these incidents were related to his race.

7    **3. Conclusion**

8    The plaintiff fails to create a genuine issue of material fact as to whether he suffered an

9 adverse employment action and as to whether he was treated differently from similarly situated

10 individuals not within his protected class. The Court should therefore grant the defendants'

11 motions on the plaintiff's Title VII, Section 1981, and WLAD race discrimination claims.

12 **B. HOSTILE WORK ENVIRONMENT**

13    Mr. Duplessis contends that the defendants maintained a hostile work environment in

14 violation of Title VII, 42 U.S.C. §1981, and WLAD. To establish prima facie hostile work

15 environment claim under either Title VII or Section 1981, the employee must raise a triable issue

16 of fact as to whether (1) he was subjected to verbal or physical conduct because of his race, (2)

17 the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter

18 conditions of his employment and create an abusive work environment. *Manatt v. Bank of*

19 *America, NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Washington v. Boeing Co.*, 105 Wn.App. 1, 12

20 (2000).

21    To determine whether conduct was sufficiently severe or pervasive, courts consider all the

22 circumstances, including the frequency and severity of the defendants' conduct, whether the

23 conduct was physically threatening or humiliating, and whether the conduct unreasonably

24 interfered with the plaintiff's work performance. *Vasquez v. County of Los Angeles*, 349 F.3d

25 634, 642 (9th Cir. 2003). The working environment must be subjectively and objectively

26 perceived as abusive. *Id.* Here, the defendants contend that summary judgment on this claim is

27 proper because the incidents cited by Mr. Duplessis were not related to race, do not rise to the

28

ORDER
Page 11

1   requisite level of severity or pervasiveness, or were never brought to management's attention.

2   Dkt. 18 at 21. As explained in more detail below, the Mr. Duplessis's allegations of conduct

3   creating a hostile work environment are not sufficiently severe and pervasive to withstand

4   summary judgment.

5         It is extremely difficult to discern what facts Mr. Duplessis alleges in support of his hostile

6   work environment claim. The response contains more than ten pages of legal argument pertaining

7   to the hostile work environment claim. Dkt. 42 at 25-35. This section of the response fails to cite

8   any factual support beyond a few conclusory statements. *See, e.g.*, Dkt. 42 at ("In this case, the

9   offensive harassment was comprised of both offensive conduct that was racial in nature **and**

10  offensive non-racial conduct directed against the one African American employee."). This lack of

11  factual support is explained as follows: "Because the facts relating to the various racial elements

12  are thoroughly explored in the Affidavit of Bernell Duplessis they are not repeated here." Dkt. 42

13  at 30. As noted above, the plaintiff's affidavit is rich with factual allegations but, like the response,

14  fails to link such allegations to the plaintiff's claims. The Court has therefore found the affidavit of

15  limited assistance in evaluating the defendants' motions.

16        The response's "factual summary" contains a short paragraph devoted to Mr. Duplessis's

17  hostile work environment claim. Dkt. 42 at 3. That section reads as follows:

18      Bernell provided extensive examples of the continuous racial discrimination, harassment,
        and retaliation he suffered at GSF in his sworn affidavit, as further supported by the
19      specific citations to his deposition and testimony and discovery. As described by Bernell,
        the racial treatment created a racially hostile environment at GSF, which included racial
20      treatment directly from supervisors and managers, such as Assistant General Manager
        Daniel Van Hoozer. These examples of racial discrimination and treatment are explained
21      in detailed [sic] by Bernell in the 'Affidavit of Bernell Duplessis' in Opposition to
        Defendants' Motion for Summary Judgment.
22

23  Dkt. 42 at 3.

24        This section contains footnotes referencing Mr. Duplessis's deposition and certain

25  exhibits. A reasonable juror viewing this evidence as a whole could not conclude that the work

26  environment at Golden State Foods was objectively abusive such that it constituted a hostile work

27  environment or that these incidents were related to Mr. Duplessis's race. Rather, Mr. Duplessis

28

ORDER
Page 12

1  cites petty incidents that, at most, evidence Mr. Duplessis's subjective belief that the environment

2  was hostile and that he was treated differently on the basis of his race. *See* Dkt. 44, Exh. 1 at 43

3  (having to go home to get tennis shoes made Mr. Duplessis sick); Dkt. 44, Exh. 1 at 27-29 (Steve

4  Hammekan mumbled in a disgruntled way while looking at Mr. Duplessis); Dkt. 45, Exh. 1 at 45-

5  46 (John Selby kept walking when Mr. Duplessis tried to request that a particular radio station be

6  played in the warehouse and got angry when Mr. Duplessis reported that he would not be at

7  work.); Dkt. 45, Exh. 1 at 46 (At a training session, Leon Dorscher gave other employees their

8  papers and just left Mr. Duplessis's papers on the table.); Dkt. 45, Exh. 1 at 396 (Larry Tandoi

9  took other employees for a ride in his personal vehicle, and Mr. Duplessis "felt left out."); Dkt.

10  44, Exh. 1 at 21 (Golden State Foods managers did not give the plaintiff the same respect as other

11  shop stewards.); Dkt. 46, Exh. 17 at 49 (As shop steward, the plaintiff was not allowed to view

12  evidence. The plaintiff was asked to resign from the safety committee. The plaintiff was denied the

13  opportunity to bid for certain jobs. On February 11, 2003, the plaintiff was sent home for the

14  week without pay.).

15        This section also references a document titled, "Examples of Racial Treatment at Golden

16  State Foods" and documents listing examples of typical encounters with Golden State Foods

17  employees. Dkt. 46, Exh. 15 at 41; Dkt. 47, Exh. 29 at 35. These documents, presumably

18  authored by the plaintiff, are not signed. The plaintiff has failed to meet his obligation to oppose

19  the defendants' motions by setting forth specific facts, under oath, demonstrating that there is a

20  genuine issue regarding the hostile work environment claim. *See* Fed. R. Civ. P. 56(e). The

21  defendants' motions should be granted as to the plaintiff's hostile work environment claim.

22  **C. DISPARATE IMPACT**

23        A disparate impact claim is a challenge to facially neutral employment practices that

24  impact one group more harshly than another and are not justified by business necessity. *Pottenger*

25  *v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2003). Under Title VII, a prima facie case of

26  disparate impact requires the plaintiff to identify (1) a significant disparate impact on a protected

27  class or group; (2) the specific employment practices or selection criteria at issue; and (3) a causal

28

1  relationship between the challenged practices or criteria and the disparate impact. *Hemmings v.*
2  *Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002).

3      The defendants seek summary judgment on Mr. Duplessis's disparate impact claim on the
4  grounds that Mr. Duplessis fails to identify a facially neutral policy or practice adversely impacting
5  a protected group. Dkt. 18 at 26. The response fails to address this contention, and the plaintiff's
6  disparate impact claim should therefore be dismissed.

7  **D. UNLAWFUL RETALIATION**

8      Retaliation for opposing a lawful employment practice is prohibited by Title VII and by
9  Washington's Law Against Discrimination. 42 U.S.C. §2000e-3(a); RCW 49.60.210(1).
10  Washington courts look to federal courts for interpretation of RCW 49.60.210 and use the
11  *McDonnell-Douglas* burden-shifting analysis used to assess Title VII claims. *Hill v. BCTI Income*
12  *Fund-I*, 144 Wn.2d 172, 180 (2001), *abrogated on other grounds by McClarty v. Totem Elec.*,
13  157 Wn.2d 214 (2006). Therefore, the analyses under Washington and federal law are similar.

14      A prima facie case of retaliation requires proof of three elements. Under Title VII, the
15  plaintiff must demonstrate (1) that he engaged in protected activity, such as filing of complaint
16  alleging racial discrimination, (2) that the employer subjected him to a materially adverse
17  employment action which might dissuade a reasonable worker from making a charge of
18  discrimination, and (3) that there is a causal link between the adverse employment action and the
19  protected activity. *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414
20  (2006); *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003). Under WLAD, the
21  plaintiff must demonstrate that (1) he engaged in protected activity, (2) the employer subjected
22  him to an adverse employment action, and (3) retaliation was a substantial factor behind the
23  adverse action. *Kahn v. Salerno*, 90 Wn.App. 110, 129 (1998). In this case, the defendants
24  contend that Mr. Duplessis fails to establish the second and third prongs of the prima facie case.

25                      **a. Employment Action**

26      The defendants contend that the employment actions cited by the plaintiff would not
27  dissuade a reasonable worker from engaging in protected activity and are not sufficiently adverse.

28

1  The response lists several employment actions that the plaintiff claims are evidence of retaliation.

2      First, Mr. Duplessis contends that he was given eight disciplinary notices in the three years

3  after he filed his first charge with the EEOC and had averaged only one disciplinary notice per

4  year in the years preceding the EEOC charge. Dkt. 42 at 17; *see* Dkt. 51, Exh. 75 at 47

5  (disciplinary notices). While the Court agrees that unwarranted discipline could prevent a

6  reasonable employee from engaging in protected activity and constitutes an adverse employment

7  action, the plaintiff fails to allege any basis for concluding the discipline he received after filing his

8  EEOC charge in January of 2003 was unwarranted. To contest the accuracy of the disciplinary

9  notices, Mr. Duplessis offers only an unsigned letter he sent to the EEOC contesting the

10 disciplinary notice pertaining to events on March 13, 2003. *See* Dkt. 47, Exh. 35 at 55. Mr.

11 Duplessis alleges that the disciplinary notices constitute retaliation but does not create a genuine

12 issue of material fact as to whether the disciplinary notices were baseless. *See* Dkt. 43 at 14.

13     Second, Mr. Duplessis cites the defendants' treatment during Mr. Duplessis's tenure as

14 shop steward. Specifically, Mr. Duplessis contends that the defendants failed to provide

15 information and to participate in meetings when Mr. Duplessis served as shop steward, denied him

16 payment for extra hours worked as shop steward, and refused to allow Mr. Duplessis to serve as a

17 witness during other employees' disciplinary hearings. Dkt. 42 at 18-19. As discussed above,

18 some of these allegations are not supported by citations to the record. The only evidence Mr.

19 Duplessis offers in support of Mr. Duplessis's contention that managers would not meet with him

20 is his deposition testimony stating that he actually did meet with managers. *See* Dkt. 44 at 22. Mr.

21 Duplessis points to no evidence demonstrating that he was entitled to and denied payment.  Mr.

22 Duplessis offers no argument or authority for the notion that providing late responses to his

23 inquiries or prohibiting him from participating as a witness in other employees' disciplinary

24 meetings constitutes the requisite adverse employment action.

25     Third, Mr. Duplessis cites events relating to his application for a lead position. Dkt. 42 at

26 18. While Mr. Duplessis contends that he withdrew his application because the defendants

27 "refused to address racial issues," he does not demonstrate that his voluntary withdrawal of his

28

ORDER
Page 15

1  application constitutes an adverse employment action.

2      Mr. Duplessis cites the conflict with Mr. Van Hoozer during his interview for the lead

3  position as an adverse employment action. Dkt. 42 at 18. The Court has reviewed Mr. Duplessis's

4  account of this event. Dkt. 45 at 57. This disagreement or argument does not constitute an

5  adverse employment action.

6      Fourth, Mr. Duplessis makes several unsupported allegations. He contends that "another

7  lead man and acting supervisor ma[de] verbal and visual threats." Dkt. 42 at 19. This contention is

8  not supported by a citation to the record, and its basis is therefore unclear. It appears that this

9  contention references an incident when Steve Hammeken mumbled something that Mr. Duplessis

10  did not hear. Dkt. 44, Exh. 1 at 27-29 (Steve Hammekan mumbled in a disgruntled way while

11  looking at Mr. Duplessis). This incident does not rise to the requisite level to support a retaliation

12  claim. Similarly, Mr. Duplessis contends that he was "disciplined for a common practice that

13  Caucasian workers did not get written up for" and "was not permitted to congregate in the office

14  area like the other Caucasian workers." Dkt. 42 at 19-20. Mr. Duplessis also contends that he was

15  discouraged from applying for supervisory positions and not given an application for such a

16  position upon request. Dkt. 42 at 20. These contentions are not supported by citations to the

17  record and do not create a genuine issue of material fact.

18      Fifth, Mr. Duplessis contends that he was falsely accused of damaging a trailer resulting in

19  loss of a safety award and pay and other benefits. Dkt. 42 at 19. A false accusation resulting in

20  denial of tangible benefits constitutes an adverse employment action and would deter a reasonable

21  worker from engaging in protected activity. Mr. Duplessis fails to create a genuine issue of

22  material fact as to the falsity of the allegation, however. As noted above, evaluation of the alleged

23  safety violation was anonymous. Dkt. 19 at 3. Mr. Duplessis fails to create a genuine issue of

24  material fact as to whether he was falsely accused of a safety violation for racial reasons.

25      Sixth, Mr. Duplessis contends that Mr. Van Hoozer told Mr. Duplessis that his "union

26  brother's [sic] should have done something" and emphasized the word "brother" in a racial

27  manner. Dkt. 42 at 19. An isolated use of the term "brother" in a racial manner does not

28

ORDER
Page 16

1   constitute an employment action and would not cause reasonable worker to refrain from engaging

2   in protected activity.

3       Finally, Mr. Duplessis contends that the defendants did not permit him to train new

4   Caucasian employees. Dkt. 42 at 17-20. Mr. Duplessis offers no evidence suggesting that the

5   training of employees was within his job description or that he was otherwise entitled to perform

6   this duty. *See* Dkt. 55 at 5 (other non-African American employees were not selected to train

7   employees because the company uses a small group of trainers to ensure consistency).

8           **b. Conclusion**

9       Having determined that Mr. Duplessis's allegations do not constitute the type of

10  employment action required under Title VII or WLAD, the Court should grant the defendants'

11  motions because of the plaintiff's failure to establish a prima facie case of retaliation.

12  **E. OTHER CLAIMS**

13      **1. Negligent Infliction of Emotional Distress**

14      The defendants ask the Court to dismiss the plaintiff's claim for negligent infliction of

15  emotional distress on the grounds that the plaintiff fails to establish that the defendants had a duty

16  to provide a stress-free work environment. Mr. Duplessis fails to address this contention and does

17  not demonstrate that the defendants were under such a duty. The motion should be granted in this

18  respect.

19      **2. Negligent Supervision**

20      The defendants contend that summary judgment on this claim is proper because Mr.

21  Duplessis fails to offer evidence showing that Golden State Foods' employees posed a risk of

22  harm to others or that any employee suffered injury. Dkt. 18 at 26. In response, Mr. Duplessis

23  offers only the allegation that "pervasive racism in the Sumner warehouse" was "unreasonably

24  harmful." Dkt. 42 at 39. The plaintiff fails to support this claim, and summary judgment is proper.

25      **3. Outrage**

26      The plaintiff contends that "there are plenty of examples . . . which rise to the level of

27  outrage" but does not cite the record in support of this assertion. Dkt. 42. Summary judgment on

28  this claim is proper.

ORDER
Page 17

1

### 4. Assault and Battery

2      The defendants' briefs do not address the plaintiffs' assault and battery claims. These are

3  therefore the only claims remaining for trial.

4  **F. SURREPLY**

5      Mr. Duplessis filed a surreply asking the Court to strike Exhibit 1 of the Second

6  Declaration of Holly M. Hearn and the Second Declaration of Cindy Sankey. Dkt. 56 at 3.

7      Exhibit 1 consists of a chart professing to compare excerpts of Mr. Duplessis's deposition

8  testimony with allegations contained in Mr. Duplessis's affidavit. Mr. Duplessis contends that the

9  chart supports his claims but constitutes a "bad faith attempt by defendants to submit extra

10  briefing in its reply." Dkt. 58 at 2. The chart merely re-organizes evidence already placed before

11  the Court and is an attempt by the defendants to refute allegations contained in the plaintiff's

12  affidavit and submitted after the motion was filed. This is proper rebuttal for a reply brief, and the

13  Court should therefore decline to strike Exhibit 1.

14      Mr. Duplessis fails to demonstrate that the Second Declaration of Cindy Sankey is

15  anything more than a response to Mr. Duplessis's allegations. In any event, the plaintiff utilized

16  the surreply as a forum to rebut the declaration. *See* Dkt. 58 at 2. The Court should deny the

17  motion to strike.

18

### V. ORDER

19      Therefore, it is hereby

20      **ORDERED** that Defendant Golden State Foods' Motion for Summary Judgment (Dkt.

21  18) is **GRANTED**; Defendants Daniel Van Hoozer and "Jane Doe" Van Hoozer's Motion for

22  Summary Judgment (Dkt. 22) is **GRANTED**; and Plaintiff's Surreply to Strike Materials

23  Contained and Attached in Defendants' Reply (Dkt. 58) is **DENIED**.

24

25

26

27

28

1    The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel

2  of record and to any party appearing pro se at said party's last known address.

3    DATED this 16th day of April, 2007.

4

5

6    Robert J. Bryan
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page 19